# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1433
No. 02-1443

_____

| | | |
|---|---|---|
| Tricia Lerohl; Shelley Hanson, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Friends of Minnesota Sinfonia; Jay Fishman, | * | Appeals from the United States |
| | * | District Court for the |
| | * | District of Minnesota. |
| Defendants - Appellees. | * | |
| | * | |
| Equal Employment Opportunity Commission, | * | |
| | * | |
| | * | |
| Amicus on Behalf of Appellants. | * | |

_____

Submitted: November 8, 2002

Filed: March 6, 2003

_____

Before WOLLMAN, LAY, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Musicians Tricia Lerohl and Shelley Hanson commenced these separate actions against the Friends of the Minnesota Sinfonia, a nonprofit corporation that governs the Minnesota Sinfonia. Lerohl and Hanson allege that they were terminated as

regular members of the Sinfonia in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, respectively. In Ms. Hanson's case, ruling on cross-motions for summary judgment, the district court[1] dismissed her complaint, concluding that the ADA does not apply to this dispute because Hanson was an independent contractor, not an employee of either the Sinfonia or its conductor, defendant Jay Fishman. Hanson v. Friends of Minn. Sinfonia, 181 F. Supp. 2d 1003 (D. Minn. 2001). In Ms. Lerohl's case, again acting on cross-motions for summary judgment, the district court[2] dismissed the complaint, agreeing with the court's decision in Hanson and therefore concluding that Lerohl was an independent contractor outside the protection of Title VII. Lerohl and Hanson appealed, and we granted the Equal Employment Opportunity Commission leave to appear as amicus curiae on their behalf.

We review grants of summary judgment *de novo*. Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Because the ultimate issue of whether Lerohl and Hanson were employees or independent contractors is one of law, it may properly be resolved by summary judgment *provided* there is no genuine issue of material fact. See Birchem v. Knights of Columbus, 116 F.3d 310, 313 (8th Cir. 1997). Here, we conclude that any fact disputes are immaterial and that Lerohl and Hanson were independent contractors as a matter of law. Accordingly, we affirm.

---

[1]The HONORABLE JAMES M. ROSENBAUM, Chief Judge of the United States District Court for the District of Minnesota, adopting the Report and Recommendation of the HONORABLE FRANKLIN L. NOEL, Chief Magistrate Judge of the United States District Court for the District of Minnesota.

[2]The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota.

# I. Background.

The Sinfonia was formed in 1989 by Fishman and other former members of the Minneapolis Chamber Symphony Orchestra. Its mission is to perform free classical music concerts in inner-city public schools and other locations accessible to inner-city youth, families with young children, and people of limited means. In its first decade of operation, the Sinfonia grew from thirty-two to seventy concerts per year. Fishman conducts the Sinfonia and acts as its executive and artistic director. Sinfonia concerts are performed by twenty-five to thirty professional musicians. Fishman and all Sinfonia players are members of Local 30-73 of the American Federation of Musicians. The Sinfonia advertises that its musicians are "the best of the area's free-lance pool."

After scheduling a series of Sinfonia concerts, Fishman prepares a list of musicians eligible to play for that series. The schedule is mailed to eligible "regular" or "first call" players who then advise the Sinfonia whether they agree to play that series. The Sinfonia's free-lance musicians also perform for other organizations and as solo performers. They may even opt out of Sinfonia concerts they have agreed to play, so long as they give two weeks notice and arrange for an eligible substitute to perform. However, to remain a Sinfonia "regular," which ensures being invited to play in most if not all Sinfonia concerts, Fishman's policy is that a musician must "accept the vast majority of the work."

All Sinfonia players, and Fishman as conductor, are paid on a per-concert basis at the union scale. The Sinfonia does not withhold income or FICA taxes on these payments, instead documenting the payments for tax purposes on an IRS Form 1099. The Sinfonia does not provide musicians annual leave, health or life insurance, worker's compensation coverage, or other fringe benefits except that it does contribute an agreed percentage of the union scale payments to the musicians union pension fund. The parties dispute whether Fishman was required to agree to these

contributions to remain in good standing as a union member. The Sinfonia also pays Fishman lump sums for his work as executive and artistic director. For tax and other purposes, he is treated as an employee with respect to these payments.

From 1990 to 1999, Lerohl and Hanson were "regular" players at Sinfonia concerts. Lerohl plays the French horn and Hanson plays the clarinet. In mid-1999, the Sinfonia stopped offering work to Lerohl and Hanson. Lerohl alleges the Sinfonia and Fishman violated Title VII by terminating her in retaliation for complaining about sexual harassment by Fishman. Hanson alleges defendants violated the ADA by ending her long-standing working relationship when she sought to resume playing after being absent several months while recovering from injuries sustained during a Sinfonia rehearsal. Both statutes protect "employees" but not independent contractors. See Birchem, 116 F.3d at 312 (ADA); Wilde v. County of Kandiyohi, 15 F.3d 103, 104 (8th Cir. 1994) (Title VII).

## II. The Relevant Legal Standard.

The issue whether a person is an employee or an independent contractor arises in many legal contexts. When the issue concerns the scope of a federal statute, we must first examine the relevant statutory language. In both Title VII and the ADA, Congress adopted a circular definition of "employee" -- an employee is an "individual employed by an employer." See 42 U.S.C. §§ 2000e(f), 12111(4). In such cases, the Supreme Court applies the general common law of agency to determine whether a hired party is an employee or an independent contractor. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-25 & n.3 (1992) (ERISA), followed in Birchem, 116 F.3d at 312-13 (ADA), and in Wilde, 15 F.3d at 105-06 (Title VII). In applying this test, the Court has instructed us to consider a nonexhaustive list of factors derived primarily from the Restatement (Second) of Agency § 220(2) (1958):

-4-

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. . . . No one of these factors is determinative.

Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989) (footnotes omitted). In weighing these factors, "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." Darden, 503 U.S. at 324 (quotation omitted); see Hunt v. Missouri, 297 F.3d 735, 741 (8th Cir. 2002). The district court may properly consider economic aspects of the parties' relationship. See Wilde, 15 F.3d at 106. "Our inquiry . . . requires more than simply tallying factors on each side and selecting the winner on the basis of a point score." Schwieger v. Farm Bureau Ins. Co. of Neb., 207 F.3d 480, 487 (8th Cir. 2000).

On appeal, Lerohl, Hanson, and the EEOC primarily argue that, in the EEOC's words, "it is critical that 'control' be given primary consideration." They then state the control issue in terms of individual Sinfonia concerts and conclude, not surprisingly, that Fishman as conductor "controlled" the rehearsals and concerts, and therefore all Sinfonia musicians are employees. We emphatically reject that approach. First, it is contrary to the Supreme Court's repeated admonition that no factor is determinative and all aspects of the parties' relationship must be considered. See Darden, 503 U.S. at 325-26 (expressly rejecting a similar contention by the United States as amicus curiae); Reid, 490 U.S. at 750-51.

-5-

Second, on a more practical level, the notion that musicians are always employees when they perform in a conducted band or orchestra flies in the face of both common sense and undisputed facts in this record, such as plaintiff Hanson's affidavit reciting that she is not an employer when she hires musicians to play while she records a musical composition. Work by independent contractors is often, if not typically, performed to the exacting specifications of the hiring party. In <u>Reid</u>, for example, the Supreme Court determined that a sculptor was an independent contractor for the purposes of the Copyright Act of 1976 even though the nonprofit association that hired him defined the scene to be sculpted and specified most of the details of the sculpture's appearance, including its scale and the materials to be used. 490 U.S. at 735-36, 752. Thus, although one relevant factor was Fishman's undisputed control in selecting the music to be played, scheduling Sinfonia rehearsals and concerts, and determining the manner in which the concert music was collectively played, that factor is not determinative of the common-law agency issue.

## III. Prior Musician Case Law.

There are surprisingly few cases addressing whether musicians who played in a band or orchestra were employees of either the entity that engaged the performance, or the musicians' band leader or orchestra conductor. <u>Hilton Int'l Co. v. NLRB</u>, 690 F.2d 318 (2d Cir. 1982), a National Labor Relations Act case, held that the members of "steady engagement" bands were not employees of the casino hotels that engaged them. The decision confirms that the question is thorny, but it is not particularly relevant because the musicians were admittedly employees of someone (their independent band leaders), as were the musicians in <u>Associated Musicians of Greater Newark, Local 16</u>, 206 NLRB 581 (1973), <u>aff'd per curiam</u>, 512 F.2d 991 (D.C. Cir. 1975). Here, on the other hand, the issue is whether the musicians were free-lance independent contractors, or were employees of either Fishman, the orchestra conductor, *or* his employer, the Sinfonia.

A more relevant labor law case is <u>Seattle Opera v. NLRB</u>, 292 F.3d 757 (D.C. Cir. 2002), where a divided panel upheld the NLRB's determination that the Seattle Opera's auxiliary choristers were employees of the Opera. But the majority relied heavily on the deference due the NLRB's decision, consistent with <u>NLRB v. Town & Country Elec., Inc.</u> 516 U.S. 85, 94 (1995). On the control theory urged by Lerohl, Hanson, and the EEOC, we find Judge Randolph's dissent more persuasive:

> The Board and the majority find it significant in determining whether the auxiliary choristers are employees rather than volunteers that the Opera "has the power or right to control and direct the person in the material details of how such work is to be performed." Maj. op. at 762. This is outright silly. Are we to suppose that volunteer firefighters or volunteer rescue workers become "employees" because the fire chief or the head of the rescue squad directs them? . . . Auxiliary choristers join other singers to perform musical works. . . . Rehearsal cannot be done independently. Choir members need to know not only the notes and the words, but they must also blend their voices together into a single sound.

292 F.3d at 776-77. Judge Randolph's reasoning is consistent with the only reported case we have found that applied the common-law test to determine whether musicians were employees of their orchestra. In <u>Florida Gulf Coast Symphony v. Dep't of Labor & Employment Sec.</u>, 386 So. 2d 259 (Fla. App. 1980), the symphony and its musicians, who were members of the American Federation of Musicians, entered into contracts providing that the musicians were independent contractors. The Florida Department of Labor and Employment Security nonetheless assessed the symphony for contributions to the state employee compensation fund. The court reversed the agency's order, disregarding the symphony's control over musician performances and concluding the musicians were independent contractors because they -

> are engaged in a distinct occupation; are considered by petitioner to be independent contractors; spend more than two-thirds of their time in activities over which petitioner has no control whatsoever; are

responsible for the manner in which the musical effects are achieved; supply their own instruments; receive the bulk of their income from sources other than petitioner; are paid on a per job basis, and are free to pursue other job opportunities in the music field at their discretion.

386 So. 2d at 264. These same facts are present in this case, except there were no written contracts between the Sinfonia and its musicians, and the record is silent as to how much of the musicians' time was spent playing elsewhere and how much of their total income was derived from sources other than the Sinfonia.

## IV. Analysis.

Like the sculptor in Reid, Sinfonia musicians such as Lerohl and Hanson are highly skilled professionals who own their own instruments and need no on-the-job training other than rehearsals to perform in a variety of musical settings. Obviously, professional musicians have the option of becoming employees of a particular band or orchestra. The record in this case suggests that is true of the musicians who play for the Minnesota Orchestra, the St. Paul Chamber Orchestra, and the Minnesota Opera. But other musicians may prefer to remain "free-lance," committing themselves fully to no client and retaining the discretion to pick and choose among available engagements, much like lawyers, accountants, and business consultants who choose private practice instead of "in-house" employment.

Our cases applying the common-law agency test have recognized this freedom-of-choice principle in determining whether a skilled professional was an employee or an independent contractor in a particular case. In our view, this is the relevant control issue, not whether Fishman could tell Lerohl and Hanson where to sit and when to play during a concert or a rehearsal. Thus, the "key distinction" is whether Sinfonia musicians retained the discretion to decline particular Sinfonia concerts and play elsewhere. Berger Transfer & Storage v. Cent. States, S.E. & S.W. Areas

Pension Fund, 85 F.3d 1374, 1380 (8th Cir. 1996) (truck owner-operators who drove for more than one company were independent contractors); accord Kirk v. Harter, 188 F.3d 1005, 1008-09 (8th Cir. 1999) (computer programmer); Wilde, 15 F.3d at 106 ("self-employed business owner"); Florida Gulf Coast Symphony, 386 So. 2d at 264.

Here, it is undisputed that Lerohl, Hanson, and the other "regular" Sinfonia musicians retained the discretion to perform elsewhere and to accept or reject playing in a particular concert series. Indeed, they were permitted to back out of specific performances after agreeing to perform in a series if they arranged for suitable substitutes. Though the Sinfonia understandably offered inducements to preferred performers, such as "regular" status, the musicians retained control over the extent to which they committed their available professional time to the Sinfonia.

It is also highly significant that the Sinfonia withheld no income or FICA taxes, documented musician payments on an IRS Form 1099, and provided no employee benefits other than contributions to an independent union pension fund. "[E]very case since Reid that has applied the [common-law] test has found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes." Kirk, 188 F.3d at 1008; see Birchem, 116 F.3d at 313. A recent exception is Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 118 (2d Cir. 2000), but Eisenberg is readily distinguishable because it involved an hourly full-time warehouse worker, not a consultant or free-lance professional. Here, the Sinfonia's professional musicians retained the discretion to perform elsewhere and accepted payments structured in a manner that confirmed their independent contractor status. In such a case, we are loath to destroy the parties' freedom to choose that form of relationship by deciding, after the fact, that they were required to contract as employer and employees, particularly when Congress remains free to extend Title VII and the ADA to this kind of independent contractor relationship if it determines that to be in the public interest.

Lerohl and Hanson and the EEOC further argue that the district courts erred because genuine issues of material fact preclude the grant of summary judgment on this record. We disagree. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For the reasons previously explained, the undisputed facts in this case establish that Lerohl and Hanson were independent contractors as a matter of law, and the disputed facts, viewed most favorably to Lerohl and Hanson, do not affect that conclusion.

Finally, Lerohl and Hanson object that the district courts improperly dismissed Fishman as a separate defendant sua sponte, citing cases in which independent band leaders have been found to be employers. A trial court has the power "to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Here, Fishman was not an independent orchestra conductor; he was an employee of the Sinfonia. If Lerohl and Hanson were employees of Fishman, they were employees of the Sinfonia. Thus, when the district courts concluded that Lerohl and Hanson were *not* employees, despite Fishman's control over their musical performances, that determination necessarily encompassed any separate claim against Fishman, whose relevant actions were taken on behalf of his employer. In these circumstances, the courts properly granted summary judgment in favor of Fishman as well as the Sinfonia.

The judgments of the district courts are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-